UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY A. GUZETTA et al,<br><br>                    Plaintiffs,<br><br>    v.<br><br>FORD MOTOR COMPANY,<br><br>                    Defendant. | Case No.: 2:21-CV-09151-MEMF-PVCx<br><br>**ORDER DENYING MOTION TO REMAND [ECF NO. 14, 21] AND GRANTING REQUESTS FOR JUDICIAL NOTICE [ECF NO. 15, 22, 23]** |

      Before the Court is Plaintiffs Jerry Guzzetta and Lynn Guzzetta's Motion to Remand (ECF Nos. 14, 21) and their Request for Judicial Notice (ECF No. 15, 22), as well as Defendant Ford's Request for Judicial Notice (ECF No. 23). On March 29, 2022, the Court deemed this matter appropriate for resolution without oral argument and vacated the hearing set for March 31, 2022. ECF No. 25; *see* C.D. CAL. L.R. 7-15. For the reasons stated herein, the Court DENIES the Motion to Remand and GRANTS the Requests for Judicial Notice.

/ / /

/ / /

1

# BACKGROUND

## I. Factual Background

Plaintiffs Jerry A. Guzzetta and Lynn Guzzetta (collectively, the "Guzzetta Plaintiffs") allege that they leased a 2019 Ford F-150 vehicle ("the Vehicle") on or about February 4, 2019, that had been manufactured or distributed by Defendant Ford Motor Company ("Ford"). ECF. No. 1-2 ("Compl.") at ¶ 9. The Guzzetta Plaintiffs allege that during the applicable warranty periods, the Vehicle developed multiple defects related to the transmission, engine, and other parts that substantially impaired the use, value, or safety of the Vehicle. *Id.* at ¶ 12. The Complaint states that "Plaintiffs suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00." *Id.* at ¶ 13.

## II. Procedural History

On June 30, 2021, the Guzzetta Plaintiffs filed this action in the Superior Court of California, County of Los Angeles, alleging violations of the Song-Beverly Consumer Warranty Act (CAL. CIV. CODE §§ 1790 *et seq.*) and fraud by omission. *See generally* Compl. Ford was served on May 6, 2021, and removed this action to federal court on July 7, 2021, citing diversity jurisdiction under 28 U.S.C. § 1441(b). ECF No. 1-1. The Guzzetta Plaintiffs initially filed the instant Motion to Remand and a Request for Judicial Notice on January 24, 2022. *See generally* ECF No. 14, 21 ("Mot."), ECF No. 15 ("Request for Judicial Notice"). This Motion was fully briefed on March 17, 2022. *See* ECF Nos. 23 ("Opp'n"), 24 ("Reply"). In its Opposition, Ford submitted a request for judicial notice. Opp'n at 13 n.2. The Motion was set for hearing on March 18, 2022. ECF No. 14. On February 10, 2022, per an Order of the Chief Judge, this case was reassigned to this Court. ECF No. 18. Pursuant to a Reassignment Order, dated February 11, 2022, all law and motion hearings were vacated. ECF No. 19. On February 25, 2022, the Guzzetta Plaintiffs re-noticed their Motion to Remand for hearing on March 31, 2022 (ECF No. 21) and resubmitted their Request for Judicial Notice (ECF No. 22).

/ / /

/ / /

/ / /

**REQUEST FOR JUDICIAL NOTICE**

I. **Legal Standard**

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

II. **The Guzzetta Plaintiffs' Request for Judicial Notice**

The Guzzetta Plaintiffs submit—and ask the Court to take judicial notice of—ten (10) exhibits in support of its Motion for Remand:

1. September 27, 2021 remand order in the Lemon law matter of *Raymond Gutierrrez v. Ford Motor Company, et al.*, No. 2:21-cv-05679-MCS-JPR, 2021 WL 4399517 (ECF No. 21, Ex. A)

2. October 5, 2021 remand order in the Lemon Law matter of *Andrew Leigh v. FCA US, LLC, et al.*, No. 8:21-cv-00316-JLS-KESx, 2021WL 4551864 (ECF No. 21, Ex. B)

3. April 28, 2021 remand order in the Lemon Law matter of *Savall v. FCA US LLC*, No. 21CV195-JM-KSCx, 2021 WL 1661051, at *1 (ECF No. 21, Ex. C)

4. April 28, 2021 remand order in the Lemon Law matter of *Mahlmeister v. FCA US LLC*, No. CV2100564-AB-AFMx, 2021 WL 1662578 (ECF No. 21, Ex. D)

5. June 18, 2020, remand order in the Lemon Law matter of *Jason Aaron Feichtmann v. FCA US LLC, et al.*, No. 5:20-cv-01790-EJD, 2020 WL 3277479 (ECF No. 21, Ex. E)

6. July 31, 2020 remand order in the Lemon Law matter of *Norma Leticia Quinones v. FCA US, LLC, et al.*, No. 2:20-cv-006144-RGK-JPRx, 2020 WL 4437482 (ECF No. 21, Ex. F)

7. May 14, 2020 remand order in the Lemon Law matter of *Russell Mullin v. FCA US, LLC, et al.*, No. 2:20-cv-02061-RSWL-PJWx, 2020 WL 2509081 (ECF No. 21, Ex. G)

8. July 7, 2020 remand order in the Lemon Law matter of *Gwendolyn Limon Gonzalez v. KIA MOTORS AMERIC, INC.*, No. 2:20-cv-04381-PA-JPRXx, 2020 WL 3790838 (ECF No. 21, Ex. H)

9. September 29, 2020 remand order in the Lemon Law matter of *Alyson Bourland v. Ford Motor Company, et al.*, No. 5:19-cv-08456-EJD, 2020 WL 5797915 (ECF No. 21, Ex. I)

10. April 29, 2020 remand order in the Lemon Law matter of *Nejad v. FCA US LLC*, No. 220CV02252RGKAGRX, 2020 WL 2079983 (ECF No. 21, Ex. J).

Although a district court generally may not consider any material beyond the pleadings in ruling on a motion to dismiss, the court may take judicial notice of matters in the public record. *Lee*, 250 F.3d at 689–90. The Ninth Circuit has recognized public records, including judgments and other court documents, as proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). When taking judicial records under notice, the Court may only do so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d at 690.

Here, the exhibits submitted by the Guzzetta Plaintiffs fall into the category of judicial records that courts have deemed proper for judicial notice. The Court therefore GRANTS the Guzzetta Plaintiffs' unopposed Request to take judicial notice of Exhibits A–J.

### III. Ford's Request for Judicial Notice

In its Opposition, Ford requests that the Court take judicial notice of the Lease Agreement between the parties. Opp'n at 13 n.2. Even where documents are not physically attached to the complaint, courts may nonetheless consider such documents if the documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them. *Lee*, 250 F.3d at 688.[1]

---

[1] Other courts have found Lease Agreements to be judicially noticeable under similar circumstances. *See, e.g.*, *Heikali v. BMW of N. Am., LLC*, No. 2:20-cv-06671-SB-SKx, 2020 WL 6582799, at *2 (C.D. Cal. Nov. 6, 2020) (granting request for judicial notice of Lease Agreement upon finding that Agreement was incorporated into complaint); *Zeto v. BMW of N. Am., LLC*, 20-cv-01380-GPC-KSCx, 2020 WL 6708061, at *2 (S.D. Cal. Nov. 16, 2020) ("[T]he Lease Agreement is judicially noticeable because even if it is not explicitly attached to the complaint, it is integral to Plaintiff's claims and its authenticity is not questioned.").

Here, the parties' Lease Agreement falls into the category of authentic documents necessarily relied upon by the complaint that courts have deemed proper for judicial notice. The Court therefore GRANTS Ford's unopposed Request to take judicial notice of the parties' Lease Agreement.

## MOTION TO REMAND

### I. Legal Standard

The "[f]ederal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (internal quotation marks omitted). Civil actions may be removed from state court if the federal court has original jurisdiction. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) ("Under the plain terms of § 1441(a), in order properly to remove an action pursuant to that provision, . . . original subject-matter jurisdiction must lie in the federal courts." (cleaned up)).

As a result, removal of a state action may be based on either diversity or federal question jurisdiction. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction. *Geographic Expeditions, Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010). Courts resolve all ambiguities "in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). A removed case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the removing defendant must establish by a preponderance of the evidence that the amount in controversy "more likely than not" exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Under these circumstances, "both sides submit proof and the court decides, by a *preponderance of the evidence*, whether the amount-in-controversy requirement has

been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (emphasis added) (citing 28 U.S.C. § 1446(c)(2)(B)). To meet this standard, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation and internal quotation marks omitted). Indeed, the parties must provide the court with "real evidence" that illustrates the "reality of what is at stake in the litigation" to guide the court in its assessment. *Id.* at 1198.

## II. Discussion

The Guzzetta Plaintiffs argue that the Court should remand this action because Ford has not established diversity jurisdiction. Here, the Guzzetta Plaintiffs do not dispute that the parties are diverse; rather, they challenge whether Ford has established that the amount in controversy exceeds $75,000. Ford insists that it has. The amount in controversy is not clear from the face of the Complaint. The Guzzetta Plaintiffs expressly plead for damages "not less than $25,001.00," Compl. at ¶ 13, but their prayer for relief does not indicate whether the total amount they seek exceeds $75,000. *Id.* at Prayer.

As a result, Ford must show by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000. *See Guglielmino*, 506 F.3d at 699 ("[B]ecause the allegation in the Jurisdiction and Venue section is not repeated in the Prayer for Relief and does not take account of attorneys' fees, accounting of moneys, or payment of back taxes and benefits, the complaint fails to allege a sufficiently specific total amount in controversy. The uncertainty which is inherent in the . . . Prayer for Relief places this case within the *Sanchez* line of cases, and we therefore apply the preponderance of the evidence burden of proof to the removing defendant."); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("In deciding whether the district court had jurisdiction at the time it entered its judgment, the relevant test is . . . 'preponderance of the evidence' . . . ."). Ford asserts that the amount in controversy requirement has been met because the Guzzetta Plaintiffs suffered: (1) "actual damages" under the Act of $19,585.59—the amount of total payments made on the Lease less the mileage offset; (2) plus a civil penalty of two times their actual damages ($39,171.18); (3) attorneys fees' of at least $40,000; and

(4) punitive damages of about $200,000. The Guzzetta Plaintiffs contend that Ford has failed to meet its burden because its proffered calculations are merely speculative.

### A. Actual Damages

Under the Song-Beverly Act, actual damages are "equal to the actual price paid or payable by the buyer," minus the reduction in value "directly attributable to heuse by the buyer." CAL. CIV. CODE § 1793.2(d)(2)(B)–(C). The reduction is based on miles driven before the first attempted repair of the defect. *Id.*

Ford alleges that the Guzzetta Plaintiffs' actual damages of $21,244.18 are calculated in the following way: First, the Lease Agreement provided that total payments would be $26,916.20 before deducting the rebate and non-cash credits of $2,000. Opp'n at 15. Therefore, deducting $2,000 from $26,916.20 results in total payments made on the Lease, which ended in 2021, of $24,916.20. *Id.* Second, the mileage offset is calculated by subtracting mileage at purchase from the mileage at first repair for an alleged defect, dividing that amount by 120,000, and multiplying that sum by the purchase price.[2] Ford notes that mileage at the time of the lease signing was fifteen miles and that, "[u]pon reviewing the warranty repair records, counsel for Ford declared that the first warranty repair occurred at 17,700 miles, when the Vehicle allegedly had issues with the transmission not shifting correctly." *Id.* at 15; *see also* ECF No. 23-1 ("Mortenson Decl.") at ¶ 7. As a result, the mileage offset calculation would be as follows: $((17{,}700-15)/120{,}000)*24{,}916.20 = \$3{,}672.02$. Opp'n at 15. Therefore, Ford contends that the amount of actual damages, equal to the amount of total payments made on the Lease of $24,916.20 less the mileage offset of $3,672.02, is $21,244.18, not including civil penalties, attorneys' fees, or punitive damages. *Id.*

The Guzzetta Plaintiffs allege that Ford's mileage offset calculation is speculative because Ford has not shown whether the mileage offset should be based upon the first visit or a subsequent

---

[2] Ford notes that "[t]he amount in controversy is established by what a plaintiff demands, not by any reductions that a defendant might achieve through its defenses." Opp'n at 14. However, the Ninth Circuit has stated that consideration of use of offsets are appropriate under the Act because "an estimate of the amount in controversy must be reduced if 'a specific rule of law of damages limits the amount of damages recoverable.'" *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 701 n.3 (9th Cir. 2018); *see also id.* ("[A]n estimate of the amount in controversy must be based on the applicable 'measure of damages,' not on what a plaintiff requests in a complaint."). Regardless, Ford provides a calculation of actual damages factoring in the milage offset.

visit. Reply at 7 (citing *Gutierrez v. Ford Motor Co.*, No. 2:21-cv-05679-MCS-JPRx, 2021 WL 4399517, at *2 (C.D. Cal. Sept. 27, 2021) (concluding that defendant's failure to show why mileage offset should be calculated based on first visit instead of plaintiff's subsequent visits to fix other complained-of defects renders his "calculations of actual damages . . . speculative and self-serving")). The Court disagrees under the circumstances of this case. As the Guzzetta Plaintiffs emphasize, their claim alleges several defects with the Vehicle, not just with the transmission, and Ford's AWS List reveals that the Guzzetta Plaintiffs made multiple repair visits, many involving defects they alleged in their complaint. Mortenson Decl. at Ex. 2. And, as the Guzzetta Plaintiffs point out, these repairs occurred at later mileage marks and, if used, would have further lowered the actual damages calculation. Ford provides no evidence indicating why the mileage offset should be based on the Guzzetta Plaintiffs' first repair visit and not on any of their subsequent repair visits. However, the Court does not find that failure dispositive because even if Ford based its calculations on the last visit listed in Ford's AWS List—as the Guzzetta Plaintiffs appear to suggest Ford should—the calculations would still result in an actual damages calculation that—when combined with a civil penalty calculation and an attorneys' fees estimate—would support an amount in controversy greater than $75,000.[3] As a result, this Court finds that Ford has shown by a preponderance of the evidence that the proper measure of actual damages—even if based upon the last repair visit—is at least $19,585.59.

### B. Civil Penalties

A plaintiff may be entitled to a civil penalty no greater than twice the amount of actual damages if they establish that the defendant's violations of the Act were willful. CAL. CIV. CODE § 1794(c). Many courts have held that a court may not simply assume the civil penalty; rather, a defendant is required to justify the assumption. *See D'Amico v. Ford Motor Co.*, No. 20-cv-2985-CJC-JCx, 2020 WL 2614610, at *3 (C.D. Cal. May 21, 2020) (collecting cases). Such courts have

---

[3] According to the AWS List, which lists the warranty repair reports on the Vehicle, the last warranty repair occurred at 25,688 miles, when the Vehicle was brought in due to issues with the transmission. Mortenson Decl. at Ex. 2, at 3. A mileage offset calculation based on this warranty repair would be as follows: ((25,688-15)/120,000)*24,916.20 = $5,330.61. Using this visit for the mileage offset, the amount of actual damages, equal to the amount of total payments made on the Lease of $24,916.20 less the mileage offset of $5,330.61, is $19,585.59, not including civil penalties, attorneys' fees, or punitive damages

held that courts do not include civil penalties in the jurisdictional analysis "unless the removing defendant makes some showing regarding the possibility of civil damages." *See Savall v. FCA US LLC*, No. 21-cv-00195-JM-KSCx, 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021) (collecting cases).

In other instances, courts have pointed out that it is absurd to require the defendant to identify specific facts in support of an allegation it denies—namely its willfulness. This Court agrees with those courts who have found that where the defendant has shown the actual damages amount by a preponderance of the evidence and the plaintiff has alleged willful conduct, the defendant has shown civil penalties in an amount twice the actual damages by the preponderance of the evidence. *See, e.g.*, *Ghebrendrias v. FCA US LLC*, No. 21-cv-06492, 2021 WL 5003352, at *2 (C.D. Cal. Oct. 28, 2021) (calculating civil penalty amount where actual damages are non-speculative and plaintiffs allege that defendant's failure to comply with obligations of Song-Beverly Act was willful); *Rahman v. FCA US LLC*, No. 21-cv-02584, 2021 WL 2285102, at *2–3 (C.D. Cal. June 4, 2021) (considering penalties where plaintiff alleges that defendant willfully and intentionally failed to comply with Song-Beverly).

Here, the Guzzetta Plaintiffs' Complaint alleges that they are entitled to a civil penalty and that Ford has engaged in willful conduct. Compl. at ¶¶ 18–20, 25, 28, 32, Prayer. Consistent with the holdings in the cases cited above, this is sufficient. *See Rahman*, 2021 WL 2285102, at *2–3 ("Defendant is not required to prove the case against itself. . . . Plaintiff here alleges that defendant willfully and intentionally failed to comply with Song-Beverly. Accordingly, '[t]he Court will consider civil penalties.'" (quoting *Brooks v. Ford Motor Co.*, No. 20-cv-00302-DSF-KKx, 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020))); *Brooks*, 2020 WL 2731830, at *2 ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act, given that most defendants . . . will 'den[y] that it willfully failed to comply with the Song-Beverly.' It is sufficient that Plaintiff alleged an intentional failure to comply and sought the civil penalty.").

The Guzzetta Plaintiffs also contend that Ford's estimate of civil penalties in this case are unsupported and speculative, given that civil penalties under the Act are based on actual damages.

Mot. at 12; *see Leigh v. FCA US LLC*, No. 8:21-cv-00316-JLS-KESx, 2021 WL 4551864, at *3 (C.D. Cal. Oct. 5, 2021) ("[Defendant's] estimate of civil penalties in this case are also unsupported and speculative given that civil penalties under the Act are based on actual damages."). However, because this Court finds that Ford successfully established actual damages by a preponderance of the evidence, the Court similarly finds that Ford's estimate of civil penalties in this case are supported by the evidence and non-speculative.

As a result, this Court finds that Ford has shown by a preponderance of the evidence that a civil penalty amount of at least $39,171.18—twice the minimum amount of actual damages—should be included in the amount in controversy.

### C. Attorneys' Fees

"[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co., LLC*, 899 F.3d 785, 793–94 (9th Cir. 2018). However, a removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and to "make this showing with summary-judgment-type evidence." *Id.* at 795. "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." *Id.*

Ford alleges that the attorneys' fees sought in this case "will likely exceed $40,000." Opp'n at 19. Ford presents several fee requests made by the Guzzetta Plaintiffs' counsel in prior Song-Beverly Act cases in support of this calculation. Opp'n at 19–20; *see also* Mortenson Decl. at ¶ 8.

The Guzzetta Plaintiffs argue that Ford has failed to "compare *this* case to any other *potentially* relevant cases." Reply at 14. To the contrary, Ford has done just that: Ford compares the litigation strategies and timelines of the current case and one of the cases it cites, *Chism*. Opp'n at 20; *see also Chism, et al. v. FCA US LLC, et al.*, No. 2:19-cv-09082 FMO (PJWx), 2021 WL 1181744, at *1 (C.D. Cal. Feb. 16, 2021). In *Chism*, a single-vehicle lemon law action against a car manufacturer and dealership involving claims and a history comparable to the instant case, the Guzzetta Plaintiffs' counsel sought attorneys' fees of $42,367. *Chism*, 2021 WL 1181744, at *1. Ford points to this case in support of its assertion that "even at this early stage in litigation,

Plaintiff's counsel has likely already incurred fees in excess of $40,000 in this action." Opp'n at 20. Although the Guzzetta Plaintiffs state that this estimate is speculative—and it may be with respect to the attorneys' fees accrued to date—it does appear to be a reasonable estimate of what could conservatively be claimed at the conclusion of this case, given the comparison with *Chism*. *See* Opp'n at 20–21.

In their Motion, the Guzzetta Plaintiffs attempt to distinguish *Chism* from the current case—specifically, the Guzzetta Plaintiffs note that the *Chism* litigation occurred over the span of nearly two years, compared to the seven months for which the instant case has been pending. Mot. at 13–14. They also note that other types of attorney work—such as filing or argument of various motions—occurred in *Chism* that have not occurred here. *Id.* However, the Court does not find these factors sufficient to distinguish *Chism* from the instant case. Although it is true that the *Chism* action took place over a longer span of time and involved the filing and arguing of motions not yet filed or argued in the current case, there is no denying that, at some point during the instant case's litigation process, these motions *more likely than not* will be filed and argued. The Guzzetta Plaintiffs note that three motions were filed in *Chism*—motions to compel arbitration, for reconsideration, and for attorneys' fees. *Id.* In the instant case, it is more likely than not that a motion to compel arbitration will be brought by Ford because Ford brought a motion to compel arbitration in the state case prior to removal. *See* ECF No. 1, at 1. Moreover, a motion for attorneys' fees will more likely than not be filed, given that success on the motion entails more money for the moving party. The Guzzetta Plaintiffs provide no evidence suggesting that the current case will, unlike *Chism*, take less than two years to resolve or not involve the filing or arguing of the same motions. The Court concludes that such evidence of the attorneys' fees request in a similar case is sufficient to provide probative evidence of the attorneys' fees that might be accrued in this case.

Accordingly, the Court finds that Ford has met its burden of showing by a preponderance of the evidence that attorneys' fees of at least $40,000 should be included in the amount in controversy.

### D. Punitive Damages

Punitive damages are recoverable "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." CAL. CIV. CODE § 3294(a). In support

of its assertion that punitive damages should be included in the amount in controversy calculation, Ford asserts that the Guzzetta Plaintiffs seek punitive damages for their fraud by omission claim and points to the Guzzetta Plaintiffs' allegations that Ford knew of a transmission defect before it sold them the Vehicle. Opp'n at 28–29 (citing Compl. at ¶¶ 44–53).

However, the mere fact that a plaintiff seeks punitive damages does not necessarily establish the requisite amount in controversy. *See Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1201 (N.D. Cal. 1998) ("Defendant's burden cannot be met simply by pointing out that the complaint seeks punitive damages and that any damages awarded under such a claim could total a large sum of money, particularly in light of the high burden that must be met in order for a plaintiff even to be eligible for receipt of discretionary punitive damages.").

As both parties note, punitive damages are often calculated as a multiplier of the plaintiff's actual damages. Mot. at 13; Opp'n at 22. Similar to calculating civil penalties, where actual damages are uncertain, any calculation of punitive damages would be speculative. Here, however, because the Court found that actual damages were *not* speculative, punitive damages are not necessarily speculative.

However, the Court finds that the punitive damages calculation in this case is still too speculative. Ford cites to two cases to justify its punitive damages calculation of $200,000, or "at least a ten times multiplier of actual damages in the amount in controversy." Opp'n at 22–23; *see Johnson v. Ford Motor Co.*, 135 Cal. App. 4th 137, 150 (2005) (granting punitive damages award of $175,000); *BMW of N. Am., Inc. v. Gore*, 701 So. 2d 507, 509 (Ala. 1997) (granting punitive damages award of $50,000). However, it makes no showing that these cases are similar to the instant case or are not outliers with respect to their punitive damages awards. As a result, Ford has failed to meet its burden here.

Nonetheless, because the total amount of actual damages, civil penalties, and attorneys' fees is $98,756.77,[4] the Court finds that the amount-in-controversy requirement has been met.

///

---

[4] As discussed above, the Court calculates actual damages to be at least $19,585.59, civil damages at least $39,171.18, and attorneys' fees at least $40,000. Therefore, the amount in controversy is at least $98,756.77.

12

### III. Conclusion

In light of the foregoing, the Court hereby DENIES the Motion to Remand, GRANTS the Guzzetta Plaintiffs' unopposed Request to take judicial notice of Exhibits A–J, and GRANTS Ford's unopposed Request to take judicial notice of the parties' Lease Agreement.

IT IS SO ORDERED.

Dated: April 5, 2022

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge